**JS-6, O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUIDRY LIASON GROUP, INC., | Case No.:  5:22-cv-00533-MEMF-PDx |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND [ECF NO. 8]** |
| v. | |
| RECKART LOGISTICS, INC., et al., | |
| Defendants. | |

     Before the Court is Motion to Dismiss filed by Defendant Reckart Logistics, Inc. ECF No. 8. For the reasons stated herein, the Court hereby GRANTS the Motion to Dismiss WITHOUT LEAVE TO AMEND.

/ / /

/ / /

1

I.   **Background**

A.  **Factual Background**[1]

Plaintiff Guidry Liason Group, Inc. ("Liason") is a well-established government contractor that executes food delivery contracts for the United States Government, primarily for the Department of Agriculture ("USDA"). Compl. ¶ 5. The U.S. Government issues a bid solicitation and contracts are awarded through a bidding process. *Id.* Liason does not directly provide the transportation services, but rather subcontracts with trucking and logistics companies to deliver the goods. *Id.*

Prior to responding to a bid solicitation, Liason sends out detailed requests for pricing ("trucking price quotes") from multiple trucking companies for each line item of the bid. *Id.* ¶ 6. The bid solicitations typically comprise of multiple line items that each set forth the origin, destination, type of item, and delivery window. *Id.* The trucking and logistics companies can choose to provide trucking price quotes on any specific line item—or multiple specific line items—without limitation. *Id.* Liason analyzes the bids by line item to determine the best trucking price quote for each. *Id.* Liason relies on the trucking price quotes to formulate its bid on the government contracts. *Id.*

When Liason is awarded a government contract, it issues purchase orders ("POs") to the trucking companies whose trucking price quote Liason has decided to accept. *Id.* ¶ 7. For each line item, the subcontracting trucking company has agreed to deliver certain goods, for a definitive price, within a specific delivery window. *Id.* Liason is not involved in the coordination and dispatch of the individual drivers, and only confers with the trucking company if there is a problem with the execution of the pick-up or delivery. *Id.*

In early 2020, Liason received multiple bid solicitations for USDA contracts for the delivery of food to various locations throughout the U.S. ("Bid Solicitations"). *Id.* ¶ 8. Thereafter, Liason sent requests to various trucking companies to submit bids on individual line items. *Id.* One such trucking company was Defendant Reckart Logistics, Inc. ("Reckart"). Liason and Reckart had previously worked on numerous USDA contracts. *Id.* ¶ 9. Reckart submitted price quotes on numerous

---

[1] Unless otherwise indicated, the following factual background is derived from the Complaint. Complaint, ECF No. 1-1 ("Compl.").

items for the USDA Contract. *Id.* ¶ 10. Liason relied upon the trucking price quotes provided by Reckart in formulating its bid for the USDA Contract. *Id.*

Liason was ultimately awarded the USDA Contracts for Bid Nos. 4100020002 (the "'002 Bid"), 4100020028 (the "'028 Bid"), 4100020408 (the "'408" Bid), and 4100020919 (the "'919 Bid"). *Id.* ¶ 11. After being notified of the award, Liason issued POs to Reckart for each line item for which it had been selected. *Id.* Reckart acknowledged receipt of the numerous POs with the understanding that a subcontract had been formed with specific price terms and delivery instructions (collectively, "Reckart Subcontract"). *Id.*

Immediately before, or in some instances, during the delivery window, Reckart informed Liason that it lacked the capacity to complete performance under the Reckart Subcontract. *Id.* ¶ 12. Liason immediately sought out numerous other carriers to fill the delivery line items. *Id.* ¶ 13. The replacement trucking companies charged substantially more per line item than Liason had planned to pay under its USDA Bid. *Id.* As a result, its costs outweighed the profits it received under the USDA Contracts. *Id.* ¶ 14. Liason's replacement costs totaled $105,479. *Id.*

i.   Reckart's Contacts with California[2]

Reckart is a third-party transportation logistics company that serves as a transportation broker between shipping customers and carriers. Reckart Decl. ¶ 5. It is incorporated under the laws of the state of West Virginia, and its principal place of business is Elkins, West Virginia. *Id.* ¶ 7. Reckart does not have a business address or other offices located in California. *Id.* ¶ 8. Reckart has one part-time employee living and working in California, who was uninvolved in the transaction at issue. *Id.* ¶ 9. Reckart transacts business with shipping customers located in all fifty U.S. states and does so almost exclusively through phone calls, emails, and letters. *Id.* ¶ 13. Reckart earns an average of less than five percent of its total annual revenue from shipping customers located in California. *Id.* ¶ 14. Other than its single part-time employee and the revenue it receives from shipping customers located in California, Reckart has no other contacts with the state of California. *Id.* ¶ 16.

---

[2] The factual allegations set forth below are taken from Reckart's Declaration of Gina Reckart attached to its Motion. ECF No. 8-1 ("Reckart Decl.").

3

### B.  Procedural History

On February 2, 2022, Liason filed a Complaint against Reckart alleging four causes of action: (1) breach of contract; (2) breach of implied contract; (3) accounts stated; and (4) promissory estoppel. *See generally* Complaint. On March 25, 2022, this case was properly removed to the Central District of California. ECF No. 1. On April 1, 2022, Reckart filed the instant Motion to Dismiss. ECF No. 8 ("Motion" or "Mot."). The Motion was fully briefed as of May 9, 2022. ECF Nos. 12 ("Opposition" or "Opp'n"), 15 ("Reply"). The Court held oral argument on July 7, 2022. ECF No. 18. At the hearing, the Court stayed the ruling on the Motion for 120 days and ordered that the parties conduct limited supplemental discovery and submit supplemental briefing only as to the issue of specific jurisdiction. *Id.*[3] On October 14, 2022, Liason filed a supplemental opposition brief. ECF No. 21 ("Opp'n Supp."). On October 27, 2022, Reckart also filed a supplemental brief. ECF No. 22 ("Mot. Supp."). Reckart also filed a Notice of Supplemental Case Law on May 17, 2023. ECF. No. 25. The Court held oral argument again on May 18, 2023.

### II.  **<u>Applicable Law</u>**

Under Federal Rule of Civil Procedure 12(b)(2), a party may file a motion to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In the face of a 12(b)(2) motion, "the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig. (Western States)*, 715 F.3d 716, 741 (9th Cir. 2013). In determining whether a complaint lacks personal jurisdiction, a court may consider evidence presented in affidavits and may order discovery on the jurisdictional issues. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *overruled on other grounds as discussed in Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

"However, 'when a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would

---

[3] During the hearing, the Court noted that the allegations set forth by Liason lacked the level of specificity required to demonstrate the second and third prongs under the specific jurisdiction test—namely, that the plaintiff's claims arose from the defendant's activities in the forum state and that exercising jurisdiction would comport with the principles of fair play and justice.

support jurisdiction over the defendant.'" *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). Under such circumstances, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010). Although the court may not assume the truth of allegations in a pleading which are contradicted by affidavit, conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011); *Unocal*, 248 F.3d at 922.

Moreover, when no applicable federal statute governing personal jurisdiction exists, as is the case here, the district court applies the law of the state in which the district court sits. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). Accordingly, the Court looks to "California's longarm statute [which] allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.* at 1211 (quoting *Daimler*, 571 U.S. at 125); *see also* CAL. CIV. PROC. CODE § 410.10.

Due process allows courts to exercise jurisdiction only over a defendant who has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Personal jurisdiction may be either general or specific. *See Picot*, 780 F.3d at 1211; *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141–42 (9th Cir. 2017); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984). The "minimum contacts" test requires a determination of reasonableness by the court by weighing the facts of each case "to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Ct. of Cal. ex rel City & County of San Francisco*, 436 U.S. 84, 92 (1978) (quoting *Hanson v. Denckla*, 357 U.S. 235, 246 (1958)).

A district court should generally grant leave to amend freely. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). However, "a district court may dismiss

without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Id.*

### A. General Jurisdiction

"General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" *Panavision Int'l, L.P. v. Toppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Helicopteros*, 466 U.S. at 414–16), *modified*, *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). The Ninth Circuit has recognized this as "an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *see also Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (noting that the standard for establishing general jurisdiction is "fairly high" and requires contacts "that approximate physical presence").

### B. Specific Jurisdiction

Even if a defendant has not had continuous and systematic contacts with the state sufficient to confer general jurisdiction, a court may exercise specific jurisdiction over the defendant. *Picot*, 780 F.3d at 1211. Specific jurisdiction exists where the claim for relief arises directly from a defendant's contacts with the forum state. *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Jurisdiction is proper "where the contacts proximately resulted from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). For a court to exercise specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211.

The plaintiff bears the burden of satisfying the first two prongs of this test. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff is able to do so, the burden then shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair under the third prong. *Id.*

### III.   Discussion

Reckart contends that Liason's Complaint should be dismissed because (1) this Court lacks personal jurisdiction over Reckart under FED. R. CIV. P. 12(b)(2); and (2) the Complaint fails to state a claim for relief under FED. R. CIV. P. 12 (b)(6). Mot. at 5–24.

#### A.  This Court does not have personal jurisdiction over Reckart.

Reckart argues that Liason's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction because Liason cannot establish that the Court has: (1) general jurisdiction over Reckart; or (2) specific jurisdiction over Reckart. Mot. 5–12. Liason does not dispute that the Court lacks general jurisdiction over Reckart, but rather contends that the Court has specific jurisdiction. Opp'n at 4–7.

Reckart argues that the Court lacks specific jurisdiction over it because it has no sufficient contacts with California. Mot. at 7–12. Reckart argues that Liason has failed to show that (1) Reckart purposefully availed itself of the forum state; (2) Liason's claims arise out of Reckart's forum-related activities; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice. *Id.*

#### i.   Liason has adequately shown that Reckart purposefully availed itself of California.

Reckart contends that it never signed a written agreement, created an express or implied contract via phone calls and email exchanges, or performed or agreed to perform any activities in California. Mot. at 8–10. Liason argues that Reckart purposefully availed itself to conduct business with a California company by agreeing to undertake deliveries taking place in California. Opp'n at 5–6. A contract "alone" is insufficient to establish minimum contacts with a plaintiff's home forum. *Picot*, 780 F.3d at 1212 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) ("[A]

contract alone does not automatically establish minimum contacts in the plaintiff's home forum.")).
Instead, "there must be actions by the defendant that create substantial connection with the forum
state." *Id.* For claims sounding in contract, courts apply a "'purposeful availment' analysis and ask
whether a defendant has 'purposefully avail[ed] [itself] of the privilege of conducting activities
within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting
*Schwarzenegger*, 374 F.3d at 802). Because all of Liason's claims sounds in contract, the Court
applies the purposeful availment test when determining whether specific jurisdiction exists over
Reckart.

　　　To establish that a defendant purposefully availed itself of the privilege of doing business in
a forum state, a plaintiff must provide "evidence of the defendant's actions in the forum, such as
executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. This requires that a
defendant "performed some type of affirmative conduct which allows or promotes the transaction of
business within the forum state." *Picot*, 780 F.3d at 1212. "In determining whether such contacts
exist, [courts] consider 'prior negotiations and contemplated future consequences, along with the
terms of the contract and the parties' actual course of dealing.'" *Id.* (quoting *Burger King*, 471 U.S.
at 489).

　　　As an initial matter, the fact that Reckart communicated with and contemplated doing
business with a California company does not, by itself, justify the exercise of jurisdiction. Indeed,
the U.S. Supreme Court has clarified that even when a nonresident's conduct might have caused an
effect on a plaintiff who happens to be in the forum state and the defendant knew the plaintiff
resided therein, that alone is insufficient to constitute the minimum contacts needed for specific
jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be
haled into court in a forum State based on his own affiliation with the State, not based on the
'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated
with the State."); *see also Burger King*, 471 U.S. at 478 ("If the question is whether an individual's
contract with an out-of-state party alone can automatically establish sufficient minimum contacts in
the other party's home forum, we believe the answer clearly is that it cannot."); *Kulko*, 436 U.S. at
93 (declining to "find personal jurisdiction in a State . . . merely because [the plaintiff in a child

support action] was residing there"). As such, Liason's emphasis on Reckart's conduct in engaging, allegedly entering into an agreement, and conducting business with a *California* company, Opp'n at 6, is unavailing because "a defendant's relationship with a plaintiff . . . , standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

However, the Court finds that Liason has nonetheless furnished sufficient evidence that Reckart "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Picot*, 780 F.3d at 1212. As an initial matter, Peter Guidry, the owner and principal of Liason, submitted a declaration stating that Reckart employee Brent McMillion initiated contact with Liason, seeking a business relationship as it related to Liason's USDA contacts. ECF No. 12-1 ("Guidry Decl.") ¶ 5. Reckart does not appear to dispute that McMillion initiated contact, and in fact appears to concede that he did. Reply at 2. McMillion, on behalf of Reckart, sent to Guidry a list of California farms that he proposed Reckart could use in future contracts with Guidry to transport products through California. Guidry Decl. ¶ 6.

Moreover, Gina Reckart, the President and owner of Reckart, submitted a declaration stating that Reckart: (1) does business with customers in all 50 U.S. states, including California; (2) earns a percentage of its total annual revenue (although at an average of less than five percent of its total) from shipping customers located in California; and (3) has employed one part-time employee in California. Reckart Decl. ¶¶ 9, 12, 14–16. Liason further alleged in its Complaint—and Reckart does not appear to dispute—that Reckart has conducted business in Riverside County, California. Compl. ¶ 2. As such, Reckart appears to have conducted business or otherwise taken action in California.

On April 24, 2020, Guidry emailed McMillion with an opportunity for Reckart to provide pricing for a dried fruit shipment from Fresno, CA, and Sanger, CA, to various locations. Guidry Decl. ¶ 7, Ex. 2. Reckart sent Guidry "spot quotes" and then sent a second, revised spreadsheet to Guidry. Reckart Decl. ¶¶ 27–28. Reckart does not appear to dispute any of this. Guidry states that he provided Reckart the opportunity to bid on six USDA contracts, all of which involved transporting food to and from California destinations. ECF No. 21-2 ("Guidry Supp. Decl.") ¶ 3, Exs. 1–6. On May 4, 2020, McMillion provided a spot quote related to shipping to Visalia, California. *Id.* Ex. 10.

/ / /

The parties' communications—and in particular, the communications between McMillion and Guidry—clearly contemplated an ongoing business relationship.[4] As discussed previously, in determining whether minimum contacts exist, courts "consider 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.* (quoting *Burger King*, 471 U.S. at 489). For one, the crux of McMillion's initial contact with Guidry was an attempt to build a business relationship with Liason with respect to its USDA contracts. As a follow-up to that conversation, McMillion proposed several California-based farms that Reckart could use in order to satisfy Liason's contracts. Moreover, Reckart does not dispute that it provided spot quotes to Liason for its USDA contract for the shipping of products to, from, and through locations in California. Reckart Decl. ¶¶ 27–31. Although Reckart contends the spot quotes did not guarantee any rates beyond the date of the spot quote, Reckart does not appear to dispute that, as of the date the quotes were provided, the quotes were accurate. *Id.* ¶ 38. Moreover, Josh Collier, Account Executive for Reckart, offered to provide subsequent, current pricing, indicating that Reckart was open and fully intended to work with Liason after the first two spot quotes were submitted. *Id.* ¶ 40.[5]

---

[4] In its Complaint, Liaison also alleges that "Liaison had worked with Reckart on numerous other USDA contracts so Reckart was familiar with the process and execution of these contracts" and "The parties, over time, had developed a course of dealing." Compl. ¶ 9. It appears, however, that Reckart has controverted this assertion in its submission, as  Gina Reckart, in her declaration, states, "Reckart has never acted as a transportation broker to any of Plaintiff's shipments, and Reckart disputes that it did so in connection with the alleged facts that serve the basis of this lawsuit." Reckart Decl. ¶ 22. It appears that Liaison also failed to identify any prior contracts or course of dealing in discovery. *See* Mot. Supp. at 6 (citing to Interrogatory Responses and other discovery).

[5] Reckart argues that the "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." Reply at 2 (citing *Thomas P. Gonzalez Corp. v. Conesjo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980)). However, the Court finds that the case law cited is unavailing. As an initial matter, it is unclear whether *Gonzalez* concerns analysis regarding general or specific jurisdiction—the opinion discusses "systematic and continuous course of business," which is more akin to general jurisdiction analysis and would therefore be inapplicable here. To the extent that *Gonzalez* did concern specific jurisdiction analysis, the Court finds its holding to be at odds with the Supreme Court's ruling in *Burger King*:

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an *inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus*

The Court therefore concludes that Liason has sufficiently demonstrated that Reckart "performed some type of affirmative conduct which allows or promotes the transaction of business within" California. *Picot*, 780 F.3d at 1212. As a result, Liason has shown that Reckart has purposefully availed itself of the state of California.

ii.   <u>Liason's claims do not arise out of Reckart's activities within the state of California.</u>

Although the Court finds that Reckart purposefully availed itself of the state of California, Liason's claims must arise from or relate to Reckart's forum-related activities to establish specific jurisdiction.[6] *Picot*, 780 F.3d at 1211. Reckart contends that Liason has failed to demonstrate that its claims arise out of or relate to Reckart's activities in California. Mot. at 10. In particular, it argues that its only activities in California are in connection with its lone employee working in California, who was uninvolved in the shipment at issue. *Id.* In determining whether a claim "arises out of" the non-resident's forum-related activities, many courts apply a "but for" test. *Ballard*, 65 F.3d at 1500. Specifically, a claim "arises out of" the defendant's forum-related activities if the plaintiff would not have suffered loss "but for" those activities. *Id.* ("The question, therefore, is this: but for [Defendants'] contacts with . . . California, would [Plaintiffs'] claims against [Defendants] have arisen?"). As discussed previously, Reckart purposefully availed itself of the state of California when it sent Liason spot quotes for the shipments to or from cities in California.

---

*obviating the need for physical presence within a State in which business is conducted*. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476 (emphasis added).

[6] During the hearing on this matter, Liason invited the Court to consider not only Reckart's "activities," but also its "omissions" in determining whether specific jurisdiction exists; however, Liason provided no support for the idea that such an inquiry was proper under this prong. As such, the Court declines to do so. As stated above, a contract alone is insufficient to establish minimum contacts with a plaintiff's home forum. *Picot*, 780 F.3d at 1212 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) ("[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum.")).  While it is possible that breach of a contract—and the attendant "omissions" where performance of the contract was supposed to occur in the forum state—might give rise to specific jurisdiction, these are not the facts presented in the current case.

However, the Court notes that Liason's Complaint specifically identifies three USDA Contracts that are at the heart of this dispute—the USDA Contracts awarded for the '002 Bid, the '028 Bid, and the '408 Bid.[7] The first contract, related to the '002 Bid, concerned the shipment of frozen pancakes from Greenville, South Carolina and delivered to recipients in Massachusetts, Pennsylvania, Maine, Illinois, Oklahoma, Ohio, New Jersey, and Washington. ECF No. 22-24 ("Reckart Supp. Decl.") ¶ 21; ECF No. 22-15 ("Stein Decl. Ex. N"), 22-18 ("Stein Decl. Ex. Q"), 22-19 ("Stein Decl. Ex. R"). The second contract, related to the '028 Bid, concerned the shipment of seed butter from Longmont, Colorado to recipients in Maine, New Jersey, Massachusetts, Rhode Island, Connecticut, Texas, and New Hampshire. Reckart Supp. Decl. ¶ 20; ECF No. 22-16 ("Stein Decl. Ex. O"), Stein Decl. Ex. R. The third contract, related to the '408 Bid, concerned the shipment of yellow split peas from St. Peter, Minnesota and delivered to recipients in Florida and Texas. Reckart Supp. Decl. ¶¶ 18–19; ECF No. 22-17 ("Stein Decl. Ex. P"), Stein Decl. Ex. R. Although Reckart initiated contact with Liason to create a business relationship and sent multiple spot quotes for contracts that required shipping products to, from, or through California, none of those spot quotes gave rise to the claims in its Complaint. Moreover, none of the contracts related to Liason's claims involved the shipping to, from, or through California.

As such, the Court finds that Liason has failed to satisfy the "but for" test. Reckart's submission of its spot quotes for shipping contracts involving the state of California was not the "but for" cause of Liason's claims. Moreover, the mere fact that Reckart reached out to and attempted to conduct business with a California company is insufficient to establish personal jurisdiction. *See Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated'

---

[7] Reckart contends that the only USDA Contracts at issue in this lawsuit are those related to the '002, '028, and '408 Bids. Reckart Supp. Decl. ¶ 14. The Court notes that Liason's Complaint also refers to a fourth USDA Contract—the '919 Bid. Compl. ¶ 11. However, Liason's breach of contract invoice which appears to be the basis of the claims—sent via email by Guidry to Collier "for monies owed to [Liason] for not honoring the terms of [the parties'] contracts"—only references the USDA Contracts awarded for the '002 Bid, the '028 Bid, and the '408 Bid. *See* Stein Decl. Ex. R. Nor is there any other substantive discussion of the '919 Bid in either of the parties' filings. Moreover, the sum of the amount lost for the '002 Bid, the '028 Bid, and the '408 Bid equal $105,479—the exact amount of damages alleged in the Complaint. *Id.*; *see also* Compl. at Prayer. As such, it appears that the '919 Bid is not at issue in this dispute. Counsel for Liaison did not dispute this at the hearing.

contacts he makes by interacting with other persons affiliated with the State."); *see also Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Kulko*, 436 U.S. at 93 (declining to "find personal jurisdiction in a State . . . merely because [the plaintiff in a child support action] was residing there").

As a result, the Court finds that Liason's claims do not arise out of Reckart's activities within the state of California. The Court therefore GRANTS the Motion to Dismiss for Lack of Personal Jurisdiction.[8]

## B.  Because amendment would be futile, the Court denies leave to amend.

Reckart contends that the Court should dismiss Liason's Complaint without leave to amend because amendment would be futile. Mot. at 2; Reply at 7. Although a district court should generally grant leave to amend freely, "a district court may dismiss w-ithout leave where . . . amendment would be futile." *Cervantes*, 656 F.3d at 1041. "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) (finding leave to amend futile where appellants "had already been put on notice once before of the same defects that led to the dismissal of their First Amended Complaint" but nonetheless submitted a First Amended Complaint that "contained the same defects as their original complaint"). Here, the Complaint suffers from jurisdictional deficiencies, rather than from mere pleading deficiencies. During the July 2022 hearing on this matter, Liason had already been put on notice regarding the Court's concerns with respect to the lack of specificity surrounding the second and third prongs of the specific jurisdiction test. Liason was provided with ample opportunity to conduct supplemental discovery and obtain the evidence necessary to further demonstrate that the second and third prongs have been satisfied. Moreover, during the hearing on this matter, Liason

---

[8] Because the Court finds that Liason's claims do not arise out of Reckart's activities in California, it need not consider whether, under the third prong, Reckart has met its burden of demonstrating that the exercise of specific jurisdiction would not "comport with fair play and substantial justice" or is reasonable. *Picot*, 780 F.3d at 1211. Moreover, the Court need not consider Reckart's alternative argument, that the Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

failed to state what additional facts it would plead to remedy its jurisdictional defect if given leave to amend. Accordingly, the Court finds amendment to be futile.

### IV.     <u>Conclusion</u>

For the foregoing reasons, the Court hereby GRANTS the Motion to Dismiss WITHOUT LEAVE TO AMEND.


IT IS SO ORDERED.


Dated: May 18, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge